T.C. Memo. 2000-334

UNITED STATES TAX COURT

ROBERT A. AND COLLEEN L. LUND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ZERO GEE ENTERPRISES TRUST, SUN FEDERAL, INC., TRUSTEE,
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 134-99, 219-99.          Filed October 30, 2000.

<u>Joe Alfred Izen, Jr.</u>, for petitioners.

<u>Ralph W. Jones</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  These cases were consolidated for trial,
briefing, and opinion.  For 1994, 1995, and 1996, respondent
determined deficiencies in petitioners' Federal income taxes and
accuracy-related penalties as follows:

Robert A. and Colleen L. Lund

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1994 | $ 504,031 | $100,806 |
| 1995 | 945,507 | 189,101 |
| 1996 | 1,292,331 | 258,466 |

Zero Gee Enterprises Trust

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1994 | $ 495,582 | $ 99,116 |
| 1995 | 908,550 | 181,710 |
| 1996 | 1,259,332 | 251,866 |

After settlement of some issues, the primary issue for decision involves whether a trust[1] petitioner established lacks economic substance and should be disregarded for Federal income tax purposes.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. References to petitioner in the singular are to Robert A. Lund.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petitions were filed, petitioner and Colleen Lund resided in Albany, Oregon, and the principal place of

---

[1]  By use of the terms "trust", "trustee", "beneficiary", and other related terms, we intend no implication as to the validity of the trust involved in these cases.

business of petitioner Zero Gee Enterprises (Zero Gee) was located in Carson City, Nevada.

In the 1980's, petitioner worked for Hewlett Packard Co. (HP) and several other computer companies as a computer programmer. In 1987, petitioner wrote a book called "Taming the HP 3000", which described the use and performance of mid-range and mainframe HP computer systems.

In 1990, petitioner organized as a sole proprietorship a business to provide consulting services, computer software development, and UNIX training relating to the HP 3000 Series of computers. Petitioner was the sole owner of the business, and the business was operated under the name of Lund Performance Solutions (LPS).

After several years, petitioner considered selling LPS and received an offer to purchase LPS for $700,000. Petitioner, however, rejected the offer because he believed LPS to have a fair market value of $1 to $2 million.

On May 19, 1993, with assistance from an organization called Bigelow Charter Corp. (Bigelow Charter), petitioner formed Zero Gee as a trust, and petitioner purportedly transferred to Zero Gee his 100-percent ownership interest in LPS in exchange for 100-percent of the beneficial interest in Zero Gee.

The principals and apparent owners of Bigelow Charter and the individual promoters of the trust schemes sold by Bigelow Charter were Loren and Bonnie Troescher.

Upon formation of Zero Gee, Bigelow Charter became the corporate trustee of Zero Gee, with Loren and Bonnie Troescher acting on behalf of Bigelow Charter.

In connection with the above transfer to Zero Gee of LPS, petitioner did not consult with an accountant or an attorney.

Petitioner paid Bigelow Charter approximately $30,000 for the documents and other assistance Bigelow Charter provided in organizing the Zero Gee trust.

On May 26, 1993, petitioner purportedly transferred his 100-percent beneficial or ownership interest in the Zero Gee trust to a British West Indies corporation named International Palm. The documentation and evidence in the record does not establish any consideration or legitimate reason for this transfer to International Palm.

On October 10, 1994, International Palm purportedly transferred its alleged 100-percent beneficial or ownership interest in the Zero Gee trust to Universal Sun, also a British West Indies corporation.

Evidence in the record in these cases regarding the ownership and operations of International Palm and of Universal Sun is conspicuously lacking.

On July 1, 1994, Sun Federal, a corporation owned by Owen Charles, another promoter of trust schemes similar to that of Zero Gee, apparently replaced Bigelow Charter as the corporate trustee of Zero Gee.

Under terms of the Zero Gee trust document, the trustees of Zero Gee were to manage, operate, and control Zero Gee for the benefit of the beneficiaries.  During the years in issue, however, neither the corporate trustee of Zero Gee nor Loren and Bonnie Troescher were involved in any significant way in the management, operations, and control of Zero Gee or LPS.  Zero Gee paid Sun Federal a total of only $3,600 a year for Sun Federal's alleged services as trustee of Zero Gee.

Under terms of the Zero Gee trust document and other trust materials:

> (1) The trustee was authorized to make noninterest bearing loans to the Lunds; and

> (2) Written approval of the trustees allegedly was required for trust expenditures in excess of $5,000.

Any approval requirement, however, under (2) above was rescinded on January 30, 1994.

After the purported transfer of LPS to the Zero Gee trust and through at least 1996, petitioner continued to manage, operate, and control the business of LPS and Zero Gee.  The business was conducted in the name of LPS and in essentially the

same manner as before the transfer to Zero Gee.  The customers were invoiced in the name of LPS, and customers paid their bills to LPS.  Petitioner continued to make all the daily business decisions for LPS, and petitioner established the levels of compensation for employees of LPS.

In 1995, petitioner individually borrowed $130,000 and obtained a $160,000 line of credit from a credit union secured by real property owned by petitioner and Colleen Lund.  The $130,000 loan proceeds and the funds obtained under the line of credit were used in the business of LPS.  The trustees of Zero Gee did not authorize either of the above credit transactions.

For 1994, 1995, and 1996, the gross and net income of LPS were as follows:

| Year | Gross Income | Net Income |
|------|-------------|-----------|
| 1994 | $1,243,338 | $   170,448 |
| 1995 | 1,751,528 | 424,960 |
| 1996 | 2,401,225 | 640,317 |
| Cumulative Total | $5,396,091 | $1,235,725 |

Of the above 3-year cumulative total $1,235,725 in net income, International Palm and Universal Sun (the purported sole beneficiaries of the trusts) received apparently $41,100, the nature of which is not established in the record.  Of the $1,194,625 balance in the above 3-year cumulative total net income of LPS, $750,000 was used to purchase another computer consulting business, $24,000 was used to purchase gold mining

equipment for use in Mexico, and $18,000 was invested in sheep in New Zealand. The ultimate disposition of the approximate $402,625 remaining in the above cumulative 3-year net income of LPS is not disclosed in the record. Approximately $100,000 was also invested in commodity accounts.

For 1994, 1995, and 1996, Zero Gee timely filed its Federal Income Tax Returns for Estates and Trusts. None of the business income earned by LPS was reported on petitioners' joint income tax returns for 1994, 1995, or 1996.

On Zero Gee's income tax returns for each of the above years, distributions equal to the total annual net income of Zero Gee were claimed as income distribution deductions to the named beneficiaries of the trust, and no taxable income was reported for Zero Gee.

For 1994, 1995, and 1996, petitioners timely and jointly filed their Federal income tax returns and reported thereon wages and consulting income both from Zero Gee as follows:

| Year | Wages | Consulting Income |
|------|-------|-------------------|
| 1994 | $     0 | $103,820 |
| 1995 | 4,000 | 72,315 |
| 1996 | 29,000 | 100 |
| Cumulative Total | $33,000 | $176,235 |

Petitioners did not report as income on their joint income tax returns any of the amounts represented by the income

distribution deductions claimed on Zero Gee's Federal income tax returns.

Also, the evidence does not indicate that International Palm and Universal Sun, the stated beneficiaries of Zero Gee, paid any taxes (United States, British West Indies, or otherwise) on any of the funds that Zero Gee treated as income distribution deductions on its Federal trust income tax returns.

On audit, petitioner did not provide to respondent's representatives records relating to LPS and Zero Gee. In the notice of deficiency issued to petitioners Robert and Colleen Lund, respondent determined that the Zero Gee trust lacked economic substance, and respondent charged petitioners for each year in issue with the entire reported gross income of Zero Gee.

Alternatively, in the notice of deficiency issued to petitioners Robert and Colleen Lund, respondent determined that the grantor trust provisions of sections 671 through 677 applied to Zero Gee and that the income of Zero Gee should be taxed to petitioners individually.

Further, and protectively in a separate notice of deficiency issued to Zero Gee for 1994, 1995, and 1996, respondent determined under sections 671 through 679 for 1994, 1995, and 1996 that Zero Gee should be taxed on the reported income of Zero Gee. No explanation is given in the notice of deficiency as to the basis for this deficiency determination and, on brief,

respondent makes no mention of this protective deficiency determination against Zero Gee.

During pretrial discovery, petitioner provided information to respondent's representatives regarding the income and expenses incurred in the business of LPS, and the parties agreed to the above gross and net income figures of the business conducted in the name of LPS.

OPINION

Taxpayers have a legal right, by whatever means allowable under the law, to structure their transactions to minimize their tax obligations. See Gregory v. Helvering, 293 U.S. 465, 469 (1935). Paper transactions, however, that have no significant purpose other than to avoid tax and that are not based on economic reality will not be recognized for Federal income tax purposes. See Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), affd. 731 F.2d 1417 (9th Cir. 1984).

Where the form of a transaction has not, in fact, altered any cognizable economic relationships, the courts may look through the form and apply the tax law according to the substance of the transaction. See Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980).

Whether a trust is to be regarded as lacking in economic substance for income tax purposes represents a question to be

decided on the totality of the facts. See United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 454 (1950).

The following factors are generally considered in deciding whether, for income tax purposes, a purported trust is to be treated as lacking in economic substance: (1) Whether the taxpayer's relationship, as grantor, to the property differed materially before and after the trust's formation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other beneficiaries of the trust; and (4) whether the taxpayer honored restrictions imposed by the trust or by the law of trusts. See Markosian v. Commissioner, supra at 1243-1245.

Petitioner argues that his relationship to LPS materially changed after the transfer of LPS to Zero Gee. We disagree. After Zero Gee was established, petitioner essentially continued to manage and operate LPS in the same manner as before the purported transfer to Zero Gee. Petitioner's relationship to LPS did not materially change. The ordinary business affairs of Zero Gee were conducted in the name of LPS. Daily business decisions were made by petitioner. Compensation of employees was determined by petitioner, and customers were invoiced by and paid their bills to LPS. The record does not reflect that the named trustees of Zero Gee limited petitioner's control over any aspect of the business of LPS.

We are incredulous that petitioner would have transferred his 100-percent ownership interest in LPS, which petitioner believed to be worth $1 to $2 million, to a foreign corporation in exchange for no stated consideration and with nothing more than an unsecured employment relationship.  Petitioners have failed to establish that their relationship to LPS differed materially before and after the formation of Zero Gee.

With regard to the second factor, in form, Zero Gee purportedly was managed by an independent trustee.  The failure of Bigelow Charter, Sun Federal, Loren and Bonnie Troescher, or Owen Charles to have any meaningful role in the management of the trust is evidence that the Zero Gee trust lacked economic substance.  See Zmuda v. Commissioner, 79 T.C at 720-721.  The evidence in these cases indicates that the trustees of Zero Gee performed no meaningful work for Zero Gee.

The sparse evidence regarding the third factor indicates that the beneficiaries of Zero Gee received nothing more than a token payment for their participation or complicity in the trust scheme.  Clearly, neither International Palm nor Universal Sun received an economic interest in Zero Gee.  In spite of Zero Gee's cumulative 3-year net income in excess of $1 million, International Palm and Universal Sun received nominal funds from Zero Gee (i.e., the majority of Zero Gee's income was not distributed), and yet Zero Gee reported no tax on any of its

reported income. Additionally, the ownership of International Palm and Universal Sun was not disclosed. Based on the evidence, we are convinced that no economic interest in LPS or in Zero Gee passed to any named beneficiary of Zero Gee.

The evidence also establishes that petitioner, in his continued management of LPS, was not bound or restricted by the terms of the Zero Gee trust. Petitioner obtained bank loans and credit for the business without approval of the trustees of Zero Gee. Petitioner appears to have had essentially unrestricted use of the property purportedly transferred to Zero Gee. The trustees were not meaningfully involved in the business of LPS or of Zero Gee. Petitioner was not restricted in any meaningful manner in his use of the funds or in his management of LPS and Zero Gee.

The only recognizable purpose for the formation of Zero Gee was tax avoidance. For $30,000, petitioner purchased a sham trust package supported by no economic substance. We conclude that Zero Gee lacked economic substance and that the net income of Zero Gee is taxable to petitioner.

Because we disregard Zero Gee for tax purposes and sustain respondent's deficiency determination against petitioners for the years in issue, respondent's protective deficiency determination against Zero Gee is not sustained.

Section 6662 imposes a penalty of 20 percent on any portion of an underpayment of tax attributable to negligence or to disregard of the rules or the regulations. For purposes of section 6662(a) negligence is a failure to make a reasonable attempt to comply with the Internal Revenue Code. See sec. 6662(c).

The accuracy-related penalties under section 6662(a) do not apply to any part of an underpayment if the taxpayer shows reasonable cause and if the taxpayer acted in good faith based on the facts and circumstances. See sec. 6664(c). A taxpayer may establish reasonable cause under section 6662(a) by proving reasonable reliance in good faith on the advice of a competent, independent expert or tax professional. See United States v. Boyle, 469 U.S. 241, 250 (1985).

Where it is common knowledge that a tax planning proposal is questionable, taxpayers are expected to make reasonable inquiry as to the legality of the proposal. See Neely v. United States, 775 F.2d 1092, 1095 (9th Cir. 1985).

Petitioner failed to consult with an attorney or accountant regarding the trust program promoted by Bigelow Charter. Petitioners negligently disregarded the tax laws and are liable for the accuracy-related penalties under section 6662(a).

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.
